**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **AIMY McCROSKY, Individually and on Behalf of All Others Similarly Situated,**<br><br>   **Plaintiff,**<br><br>**v.**<br><br>**MILLER'S ALE HOUSE, INC.**<br><br>   **Defendant.** | Civil Action No.<br><br>**CLASS AND COLLECTIVE ACTION**<br><br>**JURY TRIAL DEMANDED**<br><br>*ELECTRONICALLY FILED* |

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

Aimy McCrosky ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class and Collective Action Complaint against Miller's Ale House, Inc. ("Defendant"), and hereby states and alleges as follows:

### I.      INTRODUCTION

1.      This case implicates Defendant's violations of the Fair Labor Standards Act's ("FLSA") tip credit and subsequent underpayment of their employees at the federally mandated minimum wage rate, as well as violations of the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. §§ 333.101, *et seq.*, Pennsylvania's Wage Payment and Collection Law ("WPCL"), 43 P.S. §§ 260.1, *et seq.*, and Pennsylvania common law, for Defendant's failure to pay Plaintiff and all similarly situated worked their earned minimum wages. Plaintiff brings this case as a collective action under the FLSA, 29 U.S.C. § 216(b) and as a class action pursuant to Federal Rule of Civil Procedure 23 for the Pennsylvania state law claims.

2.      Defendant pays its tipped employees, including but not limited to waiters, servers, and bartenders, below the minimum wage rate by taking advantage of the tip-credit provisions of

the FLSA and, in Pennsylvania, the PMWA. Under the tip-credit provisions, an employer of tipped employees may, under certain circumstances, pay those tipped employees less than the minimum wage rate by taking a "tip credit" against the employer's minimum wage obligations from the tips received from customers.

3.       However, there are strict requirements for an employer to utilize the "tip credit" under the FLSA. *See* 29 U.S.C. § 203(m). An employer must advise an employee in advance of its use of the tip credit pursuant to the provisions of Section 3(m) of the FLSA. *See id.* (stating that the tip credit provision "shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection."). That is, the employer must inform the employee: (1) of the amount of the cash wage that is to be paid to the tipped employee; (2) of the amount by which the wages of the tipped employee are increased on account of the tip credit; (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool; and (4) that the tip credit shall not apply to any employee who does not receive the notice.

4.       Further, it is illegal for employers to require tipped employees to give up a portion of their tips to their employer or to ineligible employees, such as management staff or staff who do not regularly interact with and receive tips directly from customers. *See Acosta v. Osaka Japan Restaurant, Inc.*, No. CV 17-1018, 2018 WL 3397337, at *7-8 (E.D. Pa. July 12, 2018) (holding the FLSA "does not allow employers to force tipped employees to redistribute their tips to employees who do not receive tips (and who are therefore required to be paid the full minimum wage)." (citing 29 C.F.R. § 531.54; *Shahriar v. Smith & Wollensky Restaurant Grp.*, 659 F.3d 234, 240 (2d Cir. 2011); *Myers v. Copper Cellar Corp.*, 192 F.3d 546, 551 (6th Cir. 1999); *Roussell v. Brinker Int'l, Inc.*, 441 Fed. Appx. 222, 231 (5th Cir. 2011)); *see also Portales v. MBA Inv. Co.,*

*LLC*, No. 3:13CV00001, 2014 WL 5795206, at *3 (N.D. Ohio Oct. 16, 2014) ("When an employer includes a non-customarily tipped employee or another employer in a mandatory tip pool, the tip pool is invalid under the FLSA." (citing 29 U.S.C. § 203)); *Bernal v. Bankar Enter., Inc.*, 579 F. Supp. 2d 804, 810 (W.D. Tex. 2008) (employer not permitted to take the FLSA tip credit when it required waiters to pay for shortages and unpaid tabs).

5.      Additionally, an employer must pay the minimum statutory hourly rate ($2.13 per hour under the FLSA or $2.83 per hour under the PMWA). *See* 29 U.S.C. § 203(m); 43 P.S. § 133.103(d). The FLSA requires that employers comply with any State law that establishes a higher minimum wage than that established by the FLSA. *See* 29 U.S.C. § 218(a). Therefore, federal law requires that all Pennsylvania employers comply with the minimum wage standards set forth by Pennsylvania law, which requires a minimum hourly rate of $2.83 per hour for tipped employee subject to a proper "tip credit" deduction. *See, e.g., Hanke v. Vino Pinot Dining, LLC*, No. 2:15-cv-1873-SMM, 2018 WL 5909238, at *2 (D. Ariz. Mar. 21, 2018) (finding that because Arizona had enacted a higher tip credit for employees "such that the difference between the wage specified [under the FLSA § 203(m)] and the wage in effect [under Arizona law was] effectively $3.00[, t]herefore both the FLSA and AWA allow Arizona employers to take a maximum tip credit of $3.00 against their minimum wage obligations to 'tipped employees.'").

6.      Moreover, an employer cannot pay below the minimum wage to tipped employees and require those tipped employees to perform non-tipped work that is unrelated to the tipped occupation. *See* 29 C.F.R. § 531.56(e); *see also Romero v. Top-Tier Colorado LLC*, 849 F.3d 1281, 1285 (10th Cir. 2017); *Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014) (explaining that when tipped employees perform "non-tipped duties" that "are unrelated to their tipped duties . . . such as, in the case of restaurant servers, washing dishes, preparing food, mopping

the floor, or cleaning bathrooms, they are entitled to the full minimum wage for the time they spend at that work."); *Osman v. Grube, Inc.*, No. 16-CV-802, 2017 WL 2908864, at *4 (N.D. Ohio July 7, 2017) (employer may not take a tip credit for the time that a tipped employee spends on work that is not related to the tipped occupation).

7.    Finally, an employer cannot require its tipped employees to perform non-tipped work that is related to the employees' tipped occupation but exceeds 20% of the employees' time worked during a workweek. *See Marsh v. J. Alexander's, LLC*, 905 F.3d 610, 626-28 (9th Cir. 2018) (adopting 20% standard for dual jobs regulation and finding the DOL's opinion on dual jobs for tipped workers to be entitled to deference); *Fast v. Applebee's Intern., Inc.*, 638 F.3d 872, 881 (8th Cir. 2011) (granting deference to the DOL's 20% standard); *Driver v. AppleIllinois, LLC*, No. 06 Civ. 6149, 2012 WL 3716482, at *2 (N.D. Ill. Aug. 27, 2012) ("An employer may take a tip credit only for hours worked by [an] employee in an occupation in which [he] qualifies as a tipped employee."); *Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014) (the court indirectly case its imprimatur on the DOL's aforementioned dual-jobs regulation and Field Operations Handbook, citing both the "related to" standard in 29 C.F.R. § 531.56(e) and the 20% standard in § 30d00(e)); *Flood v. Carlson Restaurants, Inc.*, No. 13 Civ. 6458 (AT), 2015 WL 1396257 (S.D.N.Y. Mar. 27, 2015) (denying defendants' motion to dismiss, explaining that the 20% standard is a reasonable interpretation of the FLSA and ultimately granting 216(b) notice); *Ide v. Neighborhood Restaurant Partners, LLC*, No. 13 Civ. 509 (MHC), 2015 WL 11899143, at *6 (N.D. Ga. Mar. 26, 2015) ("a reasonable interpretation of § 531.56(e) is that [plaintiff] would be entitled to minimum wage if she spends more than twenty percent of her time performing related but non-tipped duties."); *Crate v. Q's Restaurant Group, LLC*, 2014 WL 10556347, at *4 (M.D. Fla. May 2, 2014) ("[T]he Court concludes that the 20% rule clarifies the ambiguity contained in

29 C.F.R. § 531.56(e) by delineating how much time a tipped employee can engage in related, non-tipped producing activity before such time must be compensated directly by the employer at the full minimum wage rate.").

8.      Similarly, under the PMWA, an employer may in certain circumstances take a "tip credit" toward its state minimum wage obligations for tipped employees. Pursuant to the explicit language of the PMWA, a tip credit may not be taken "with respect to any tipped employe[e] unless: (1) Such employe[e] has been informed by the employer of the provisions of [43 P.S. § 333.103(d)]; (2) All tips received by such employe[e] have been retained by the employe[e] . . . except that this subsection shall not be construed to prohibit the pooling of tips among employe[e]s who customarily and regularly receive tips." 43 P.S. § 333.103(d).

9.      Section 333.103(d) provides in relevant part: "In determining the hourly wage an employer is required to pay a tipped employe[e], the amount paid by such employe[e] by his or her employer shall be an amount equal to: (i) the cash wage paid the employe[e] which for the purposes of the determination shall be not less than the cash wage required to be paid the employe[e] on the date immediately prior to the effective date of this subparagraph; and (ii) an additional amount on account of the tips received by the employe[e] which is equal to the difference between the wage specified in subparagraph (i) and the wage in effect under section 4 of this act. The additional amount on account of tips may not exceed the value of tips actually received by the employe[e]."

10.      In addition, Pennsylvania law mandates that "[t]he amount per hour which the employer takes a tip credit shall be reported to the employee in writing each time it is changed from the amount per hour taken in the preceding week." 34 Pa. Code § 231.34.

11.      Defendant violated the FLSA and Pennsylvania law in the following respects:

a. **Violation for failure to inform:** Defendant failed to correctly inform Plaintiff of the desire to rely on the tip credit to meet their minimum wage obligations. Defendant failed to properly inform Plaintiff of the following: (1) the amount of the cash wage that is to be paid to the tipped employee; (2) the amount by which the wages of the tipped employee are increased on account of the tip credit; (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool; and (4) that the tip credit shall not apply to any employee who does not receive the notice.

b. **Violation for making illegal deductions that reduced Plaintiff's direct wage below the minimum required hourly wage for tipped employees:** Plaintiff was required to purchase certain clothing to work for Defendant, which reduced her wages below the minimum hourly wage required for tipped employees.

c. **Violation for performing work unrelated to tipped occupation:** Plaintiff was required to perform improper types, and excessive amounts, of non-tipped work, including but not limited to vacuuming, taking out trash, doing dishes, cleaning bathrooms, sweeping and mopping floors, cleaning walls, and stocking products.

d. **Violation for performing non-tipped side work in excess of 20% of the time spent working in the week:** Plaintiff was required to perform greater than 20% of her time in performing non-tip producing side work, including but not limited to setting up tables, rolling silverware, cleaning tables, wiping booths, refilling condiments, amongst other duties.

12. As a result of these violations, Defendant has lost the ability to use the tip credit and therefore must compensate Plaintiff and all similarly situated worked at the full minimum wage rate, unencumbered by the tip credit, and for all hours worked. In other words, Defendant must account for the difference between the wages paid to Plaintiff and all similarly situated workers and the minimum wage rate.

## II.   SUBJECT MATTER JURISDICTION AND VENUE

13. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 as this case is brought under the laws of the United States, specifically the FLSA, 29 U.S.C. § 201, *et seq.* The Court has supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367

14.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b). Defendant operates restaurants in this District, employs numerous workers who reside in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred within this District.

### III.     PARTIES AND PERSONAL JURISDICTION

15.     Plaintiff Aimy McCrosky is an individual who worked for Defendant at the Miller's Ale House restaurant located in Willow Grove, Pennsylvania. Plaintiff's written consent to this action is attached hereto as Exhibit A.

16.     The FLSA Class Members are all current and former tipped employees who worked for Defendant for at least one week during the three-year period prior to the filing of this Complaint through final resolution of the Action.

17.     The Pennsylvania Class Members are all current and former tipped employees who worked for Defendant in Pennsylvania for at least one week during the four-year period prior to the filing of this Complaint through final resolution of the Action.

18.     The FLSA Class Members and Pennsylvania Class Members shall be collectively referred to as "Class Members" unless otherwise indicated herein.

19.     Defendant Miller's Ale House, Inc. is a Delaware corporation with its principal place of business located in Florida and is registered to do business in Pennsylvania. Defendant may be served with process by serving its registered agent: CT Corporation System, 600 North Second Street, Suite 401, Harrisburg, Pennsylvania 17101.

20.     Personal jurisdiction exists over Defendant because it has sufficient minimum contacts with the State of Pennsylvania to confer personal jurisdiction. Defendant conducts business throughout Pennsylvania, operates more than ten brick-and-mortar restaurants in

Pennsylvania, contracts with and employs Pennsylvania residents, has Pennsylvania customers, markets to residents of Pennsylvania, and owns property in Pennsylvania.

## IV.   COVERAGE

21.     At all material times, Defendant has been an employer within the meaning of the FLSA. 29 U.S.C. § 203(d).

22.     At all material times, Defendant has been an enterprise in commerce or in the production of goods for commerce within the meaning of the FLSA. 29 U.S.C. § 203(s)(1).

23.     At all material times, Defendant has enjoyed yearly gross revenue in excess of $500,000.

24.     At all material times, Plaintiff was an employee engaged in commerce or the production of goods for commerce.

25.     Defendant operates a nationwide chain of restaurants with the name "Miller's Ale House" under the control of the same senior-level management. Indeed, the restaurants advertise themselves as a unified entity through the same website.

26.     Defendant represents itself to the public as one entity operating multiple Miller's Ale House restaurant locations.

27.     At all material times, Plaintiff has been an employee of Defendant within the meaning of 43 P.S. § 33.103 and the supporting Department of Labor and Industry regulations.

## V.   FACTS

28.     Defendant operates a chain of restaurants under the trade name "Miller's Ale House" throughout the United States. Defendant operates these restaurants in Delaware, Florida, Georgia, Illinois, Maryland, New Jersey, New York, Pennsylvania, Tennessee, and Virginia. Upon

information and belief, Defendant operates eleven separate Miller's Ale House restaurants in Pennsylvania.

29.     The Miller's Ale House restaurants are full-service restaurants that employ tipped workers, including waiters, servers, and bartenders, to provide service to customers.

30.     Defendant employed Plaintiff and Class Members as "tipped employees," in positions such as waiters, servers, and bartenders. Waiters and servers gather orders from customers and deliver food and drinks to the customers. Waiters and servers are paid an hourly wage by Defendant and receive tips from customers. A bartender prepares and serves drinks to customers. A bartender is likewise paid an hourly wage by Defendant and receives tips from customers.

31.     However, Defendant paid these tipped workers less than the minimum wage.

32.     Defendant attempts to utilize the tip credit to meet its minimum wage obligation to its tipped employees, including Plaintiff and Class Members.

33.     Plaintiff worked for Defendant at the Miller's Ale House in Willow Grove, Pennsylvania. She worked as a waitress and bartender, and was paid less than the minimum wage. Plaintiff worked for Defendant from approximately August 2018 through January 2021.

34.     The tip credit has a harmful effect on workers that threatens the health of the economy. Adasina Social Capital, a company representing investors with more than $538 billion in assets, has issued a letter to large corporations operating restaurants advising of the ills of using the tip credit.[1] The letter states as follows:

---

[1]    *See* https://adasina.com/investor-statement-in-support-of-ending-the-subminimum-wage/ (last visited Feb. 16, 2022)

Tipped workers are the largest group paid a subminimum wage and represent approximately six million people in the United States. The restaurant industry by far employs the largest number of tipped workers, representing 13.6 million people.

**Frozen at $2.13 per hour, a tipped subminimum wage worker can be paid as little as $4,430 per year for full-time work.** As a result, in the 42 states that allow payment of a subminimum wage, tipped workers are more than twice as likely to live in poverty, and the rates are even higher for women and people of color. The subminimum wage for tipped workers has risen little since it was enacted following the emancipation of slavery, a time when employer trade associations pushing to recoup the costs of free, exploited labor.[2]

35.     Given the harmful effects of the tip credit, there are strict requirements that must be met by an employer who seeks to utilize the tip credit to meet its minimum wage obligations.

36.     In this case, Defendant did not satisfy the strict requirements to use the tip credit. Defendant maintained a policy or practice whereby it failed to properly provide Plaintiff and the Class Members with the statutorily required notice regarding (1) the amount of the cash wage that is to be paid to the tipped employee, (2) the amount by which the wages of the tipped employee are increased on account of the tip credit, (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool, and (4) that the tip credit shall not apply to any employee who does not receive the notice.

37.     Defendant also maintained a policy or practice whereby tipped employees were required to perform non-tip producing side work unrelated to the employees' tipped occupation. As a result, Plaintiff and the Class Members were engaged in dual occupations while being compensated at the tip credit subminimum wage rate. While performing these non-tip generating duties, they did not interact with customers and could not earn tips.

---

[2]     *Id.* (emphasis in original).

38.     These duties include but are not limited to the following: vacuuming, sweeping, cleaning, including cleaning mold, washing dishes, polishing glasses, wiping countertops, stocking supplies, taking out the trash, mopping floors, and scrubbing metal surfaces with sanitizer, amongst other activities that were not related to tipped duties.

39.     Defendant also maintained a policy or practice whereby tipped employees were required to spend a substantial amount of time throughout a workweek, in excess of 20 percent, performing non-tip producing side work related to the employees' tipped occupation.

40.     Specifically, Defendant maintained a policy or practice whereby tipped employees were required to spend a substantial amount of time performing non-tip producing side-work, including but not limited to setting up tables, cleaning tables, shining and rolling silverware, wiping booths, and refilling condiments.

41.     Further, Defendant required Plaintiff and the Class members to perform non-tip producing work during their shifts and after the restaurant closed. Indeed, Defendant required Plaintiff and the Class Members to perform such side work during their shifts when they were not serving customers and had no opportunities to earn tips, during which they would perform manual labor cleaning and setup duties. Likewise, Defendant required Plaintiff and the Class Members to remain at the restaurant after it had closed to the public and when there was no opportunity to earn tips, to perform manual labor cleaning duties. At times, they spent 31 minutes to two hours performing such side work during their shifts and after the restaurant was closed performing non-tip producing work.

42.     However, Defendant did not pay their tipped employees the full minimum wage rate for all of this work despite being readily able to do so. Indeed, Defendant allowed its tipped employees who opened the restaurant (before it was open to the public for the day) to clock in at

the full minimum wage rate of $7.25 under a specific job code before customers could arrive, and would re-clock in at the subminimum wage rates once the restaurants opened to the public. This means that Defendant knew how to, and could, compensate these tipped employees for such non-tipped side work. However, pursuant to Defendant's policies and/or practices, these workers were not allowed to switch back to the full minimum wage job code throughout their shifts when doing excessive non-tip producing side work or during closing hours, during which no customers were in the restaurant. The duties that Defendant required Plaintiff and the Class Members to perform were duties that are customarily assigned to "back-of-the-house" employees in other establishments, who typically receive at least the full minimum wage rate.

43.    When the tipped employees performed these non-tipped duties, they usually did not interact with customers and did not have an opportunity to earn tips.

44.    Indeed, Defendant did not have a policy prohibiting tipped employees from performing certain types, or excessive amounts, of non-tipped work.

45.    Defendant did not track or record all of the time the tipped employees spent performing non-tipped work at the appropriate minimum wage rate, despite having the capability to do so. Defendant's timekeeping system was capable of tracking multiple job codes for different work assignments, but Defendant failed to track all of the specific tasks for Plaintiff and Class Members.

46.    Defendant uses a point-of-sale ("POS") system to record hours worked by its tipped employees. Defendant then analyzes the information collected by the POS system, including the labor costs at each of the restaurants.

47.    In the POS system, Defendant can and did create different "clock in" codes that would allow tipped employees to record their time at the full minimum wage when performing

non-tipped worked. For example, tipped employees like Plaintiff and Class Members were required to utilize this specific job code when they worked the opening shift during the time when they arrived for work at the restaurant before it was open to the public.

48.     However, Defendant did not allow their tipped employees to clock-in at the full minimum wage rate when performing the non-tipped work described in this Complaint.

49.     Defendant's managers at the restaurants were eligible to receive bonuses, in part, based on meeting or exceeding certain labor cost targets, which created an incentive to keep the amount paid to tipped employees low.

50.     Moreover, Defendant violated the FLSA and PMWA by not paying the minimum "tipped" hourly rate. Defendant required its tipped employees to pay for items for their "uniform," such as specific styles of shirts, pants, belts, and specialized shoes. These clothing items were required to perform work for Defendant and were primarily for the benefit and convenience of Defendant. The costs for these items were not reimbursed by Defendant.

51.     Because Defendant paid its tipped employees at the minimum of $2.13 per hour (or the state's respective tipped wage rate), any week in which a tipped employee was required to pay for work-related expenses for Defendant's business, their compensation fell below the minimum wage rate, thereby negating Defendant's entitlement to claim the tip credit.

52.     In other words, by requiring Plaintiff and Class Members to pay for these work-related expenses, their hourly rates of pay were reduced by the amount of these uniform costs. As a result, they were not even paid the minimum hourly rate necessary for Defendant to claim the tip credit.

53.     Because Defendant violated the requirements to claim the tip credit, Defendant lost the right to take a credit toward its minimum wage obligation to Plaintiff and the Class Members.

As such, Plaintiff and the Class Members were not compensated at the required minimum wage rate.

54.     Defendant knew or should have known that its policies or practices violate the law, and Defendant has not made a good faith effort to comply with the FLSA or PMWA. Rather, Defendant acted knowingly, willfully, and/or with reckless disregard of the law. Defendant carried and continues to carry out the illegal pattern and practice regarding its tipped employees as described in the Complaint. Indeed, Defendant has been previously sued multiple times for FLSA violations against tipped employees throughout the past decade, and has paid settlements to tipped employees that includes portions of those settlements directed towards liquidated damages. Despite being put on notice multiple times over the past decade that its practices violate the FLSA as to tipped employees, Defendant continued with its violative practices and continues those illegal practices to this day. As such, Defendant's conduct constitutes a willful violation of the FLSA, and was not based on a good faith and reasonable belief that its conduct complied with the law.

## REVISED FIELD OPERATIONS HANDBOOK AND NEW DUAL JOBS REGULATION

55.     On November 8, 2018, the Department of Labor issued opinion letter FLSA2018-27, which provided a standard for interpreting the dual jobs regulation that was different than the "80/20" rule that had existed at the time. However, nearly every court to have considered that opinion letter held that the opinion letter was not entitled to any deference. *See Flores v. HMS Host Corp.*, No. 8:18-cv-03312-PX, 2019 U.S. Dist. LEXIS 183906 (D. Md. Oct. 23, 2019); *Callaway v. DenOne, LLC*, No. 1:18-cv-1981, 2019 WL 1090346 (N.D. Ohio Mar. 8, 2019); *Cope v. Let's Eat Out, Inc.*, 354 F. Supp. 3d 976 (W.D. Mo. 2019); *Spencer v. Macado's, Inc.*, 399 F. Supp. 3d 545, 552-53 (W.D. Va. 2019).

56.     Therefore, the Department of Labor announced its intention to revise the dual jobs regulation in 29 C.F.R. § 531.56(e) and issued a notice of proposed rule-making on October 8, 2019.[3]

57.     After soliciting comments, the Department of Labor published its final rule on December 20, 2020, which had an effective date of March 1, 2021.[4] After delaying the effective date of the Final Rule,[5] on June 21, 2021, the Department of Labor announced "a notice of proposed rulemaking to limit the amount of non-tip producing work that a tipped employee can perform when an employer is taking a tip credit."[6]

58.     After soliciting more comments, the Department of Labor announced on October 28, 2021, the publication of a final rule (Tips Dual Jobs final rule).[7]

59.     Under the Final Rule, an employer cannot take a tip credit for any of the time spent by a tipped worker performing any non-tipped work that exceeds 30 minutes. That is, when a tipped worked performed non-tipped work for a continuous period of time exceeding 30 minutes, the employer cannot claim the tip credit.

60.     Here, Defendant illegally required Plaintiff and the Class Members to perform non-tip producing work for an excessive period of time. That is because Defendant required Plaintiff and the Class Members to perform non-tipped work 31 minutes to two hours before the restaurants were open for business, throughout their shifts, and after they were closed, when the restaurants

---

[3]     *See* https://www.federalregister.gov/documents/2019/10/08/2019-20868/tip-regulations-under-the-fair-labor-standards-act-flsa (last visited Feb. 16, 2022).

[4]     *See* https://www.federalregister.gov/documents/2020/12/30/2020-28555/tip-regulations-under-the-fair-labor-standards-act-flsa (last visited Feb. 16, 2022).

[5]     *See* https:///www.dol.gov/agencies/whd/flsa/tips (last visited Feb. 16, 2022).

[6]     *See* https://www.federalregister.gov/documents/2021/06/23/2021-13262/tip-regulations-under-the-fair-labor-standards-act-flsa-partial-withdrawal (last visited Feb. 16, 2022).

[7]     *See* https://www.dol.gov/agencis/whd/flsa/tips (last visited Feb. 16, 2022).

did not have customers and there was no opportunity to earn tips. During this time, Defendant paid below the minimum wage rate and forced Plaintiff and the Class Members to perform non-tip producing duties, as noted above.

61.     Given that Defendant failed to comply with the requirements to take the tip credit, Defendant has lost the ability to claim the tip credit and owes Plaintiff and the Class Members pay at the full minimum wage rate per hour for all hours they worked for Defendant.

## VI.     FLSA § 216(b) COLLECTIVE ACTION ALLEGATIONS

62.     Plaintiff brings this Action as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b) on behalf of all persons who were or are employed by Defendant as a tipped worker for at least one week during the three-year period prior to the filing of this Complaint through final resolution of this Action.

63.     Plaintiff has actual knowledge, through conversations with her co-workers, that a collective of similarly situated workers exists who have been subjected to the same policies of Defendant with respect to the payment of the minimum wage.

64.     The FLSA Class Members are similarly situated to Plaintiff in that they share the same duties and were subject to the same violations of the FLSA.

65.     Like Plaintiff, the FLSA Class Members were not given proper notice of the tip credit provisions and performed substantial work that was unrelated to their tip producing duties for a significant period of time.

66.     Moreover, the FLSA Class Members were also subject to deductions and expenses that dropped their compensation below the minimum wage.

67.     Plaintiff and the FLSA Class Members all labored under the same corporate structure, the same corporate policies, the same corporate chain of command, and pursuant to the rules in the same company handbook.

68.     The names and addresses of the FLSA Class Members are available from Defendant's records. To the extent required by law, notice will be provided to these individuals by first class mail, email, text message, by posting a notice in common work/rest areas, or by the use of techniques and a form of notice similar to those customarily used in representative actions.

69.     Although the exact amount of damages may vary among the FLSA Class Members in proportion to the number of hours they worked, damages for each individual can be easily calculated using a simple formula.

70.     As such, the class of similarly situated FLSA Class Members is properly defined as follows:

> **All current and former tipped employees who worked for Defendant for at least one week during the three-year period prior to the filing of this Complaint through final resolution of this Action.**

## VII.     RULE 23 CLASS ACTION ALLEGATIONS

71.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of the Pennsylvania Class Members, which is comprised of the following:

> **All current and former tipped employees who worked for Defendant for at least one week in Pennsylvania during the four-year[8] period prior to the filing of this Complaint through final resolution of this Action.**

---

[8]     Plaintiff's Pennsylvania common law unjust enrichment claim is subject to a four (4) year statute of limitations. *See Martin v. Ford Motor Co.*, 765 F. Supp. 2d 673, 685 (E.D. Pa. 2011). Plaintiff's PMWA and WPCL claims are subject to a three (3) year statute of limitations. *Blair v. Comprehensive Healthcare Management Services, LLC*, No. 2:18-cv-1667, 2021 WL 3855931, at *2 (W.D. Pa. Aug. 27, 2021).

72.     <u>Numerosity</u>. The number of members in the Pennsylvania Class is believed to exceed forty. This volume makes bringing the claims of each individual member of the Pennsylvania Class before this Court impracticable. Likewise, joining each individual member of the Pennsylvania Class as a plaintiff in this Action is impracticable. Furthermore, the identity of the members of the Pennsylvania Class will be determined from Defendant's records, as will the compensation paid to each of them. As such, a class action is a reasonable and practical means of resolving these claims. To require individual actions would prejudice the Pennsylvania Class and Defendant.

73.     <u>Typicality</u>. Plaintiff's claims are typical of the Pennsylvania Class because, like the members of the Pennsylvania Class, Plaintiff was subject to Defendant's uniform policy and practices and was compensated in the same manner as others in the Pennsylvania Class. Plaintiff and the Pennsylvania Class have been uncompensated and/or under-compensated as a result of Defendant's common policies and practices, which failed to comply with Pennsylvania law. As such, Plaintiff's claims are typical of the claims of the Pennsylvania Class. Plaintiff and all members of the Pennsylvania class sustained damages arising out of and caused by Defendant's common course of conduct in violation of law as alleged herein.

74.     <u>Adequacy</u>. Plaintiff is a representative party who will fairly and adequately protect the interests of the Pennsylvania Class because it is in her interest to effectively prosecute the claims herein alleged in order to obtain the unpaid wages and penalties required under Pennsylvania law. Plaintiff has retained attorneys who are competent in both class actions and wage and hour litigation. Plaintiff does not have any interest which may be contrary to or in conflict with the claims of the Pennsylvania Class she seeks to represent.

75. <u>Commonality</u>. Common issues of fact and law predominate over any individual questions in this matter. The common issues of fact include, but are not limited to:

    a. Whether Defendant properly informed Plaintiff and the Pennsylvania Class Members of the intent to claim the tip credit;

    b. Whether more than 20% of the work performed by Plaintiff and the Pennsylvania Class Members was non-tip generated work;

    c. Whether Plaintiff and the Pennsylvania Class Members performed non-tip producing side work for significant periods of time during their shifts and/or after it had closed for business; and

    d. Whether Plaintiff and the Pennsylvania Class Members were subject to unlawful deductions.

76. The common issues of law include, but are not limited to:

    a. Whether Defendant can claim the "tip credit"'

    b. Whether Defendant violated the PMWA;

    c. Whether Defendant violated the WPCL;

    d. Whether Plaintiff and the Pennsylvania Class are entitled to compensatory damages;

    e. Whether Defendant was unjustly enriched by virtue of its policies and practices with respect to Plaintiff and Pennsylvania Class Members' pay;

    f. The proper measure of damages sustained by Plaintiff and the Pennsylvania Class Members; and

    g. Whether Defendant's actions were "willful."

77.    <u>Superiority</u>. A class action is superior to other available means for the fair and efficient adjudication of this lawsuit. Even in the event any member of the Pennsylvania Class could afford to pursue individual litigation against a company the size of Defendant, doing so would unduly burden the court system. Individual litigation would magnify the delay and expense to all parties and flood the court system with duplicative lawsuits. Prosecution of separate actions by individual members of the Pennsylvania Class would create the risk of inconsistent or varying judicial results and establish incompatible standards of conduct for Defendant.

78.    A class action, by contrast, presents far fewer management difficulties and affords the benefits of uniform adjudication of the claims, financial economy for the parties, and comprehensive supervision by a single court. By concentrating this litigation in one forum, judicial economy and parity among the claims of individual Pennsylvania Class Members are promoted. Additionally, class treatment in this matter will provide for judicial consistency. Notice of the pendency and any resolution of this action can be provided to the Pennsylvania Class by mail, electronic mail, text message, print, broadcast, internet and/or multimedia publication. The identities of members of the Pennsylvania Class is readily identifiable from Defendant's records.

79.    This type of case is well-suited for class action treatment because: (1) Defendant's practices, policies, and/or procedures were uniform; and (2) the burden is on Defendant to prove it properly compensated its employees including that it properly complied with Pennsylvania's tip credit requirements and/or any other exemptions that might apply. Ultimately, a class action is a superior form to resolve the Pennsylvania claims detailed herein because of the common nucleus of operative facts centered on the continued failure of Defendant to pay Plaintiff and the Pennsylvania Class members per applicable Pennsylvania laws.

## VIII.   CAUSES OF ACTION

### COUNT I
**Violation of the FLSA**
**Failure to Pay the Minimum Wage**
**On Behalf of Plaintiff and the FLSA Class Members**

80.     Plaintiff incorporates the preceding paragraphs by reference.

81.     This count arises from Defendant's violation of the FLSA in connection with its failure to pay the minimum wage. *See* 29 U.S.C. § 206.

82.     Plaintiff and the FLSA Class Members were paid hourly rates less than the minimum wage while working for Defendant.

83.     Plaintiff and the FLSA Class Members were not exempt from the minimum wage requirements of the FLSA.

84.     Defendant's failure to comply with the minimum wage requirements of the FLSA, and, in particular, the tip credit requirements, resulted in Plaintiff and the FLSA Class Members being paid less than the Federal minimum wage rate.

85.     Defendant's failure to pay the minimum wage to Plaintiff and the FLSA Class Members, in violation of the FLSA, was willful and not based on a good faith belief that its conduct did not violate the FLSA. 29 U.S.C. § 255(a).

### COUNT II
**Violation of the PMWA**
**Failure to Pay Minimum Wages for Failure to Notify**
**On Behalf of Plaintiff and the Pennsylvania Class**

86.     Plaintiff incorporates the preceding paragraphs by reference.

87.     Defendant violated the PMWA by failing to pay Plaintiff and Pennsylvania Class Members minimum wages for all hours worked in a workweek.

88.    Specifically, Defendant paid Plaintiff and the Pennsylvania Class Members below the state minimum wage rate without complying with the "tip credit" rules required for an employer to pay less than the state minimum wage.

89.    Plaintiff and the Pennsylvania Class Members were not informed, in advance of Defendant's use of the tip credit, of the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by Defendant, or that such amount may not exceed the value of the tips actually received by the employee.

90.    Likewise, Defendant did not report, in writing, to Plaintiff and the Pennsylvania Class members, the amount per hour which it claimed as a tip credit against its obligation to pay the PMWA's required state minimum wage each time it was changed from the amount per hour taken in the preceding week.

91.    Defendant failed to comply with the notification requirements set forth within the express language of the PMWA and supporting regulations. 43 P.S. § 333.103(d); 34 Pa. Code § 231.34.

92.    Defendant's uniform policies and/or practices further required Plaintiff and Pennsylvania Class members to perform non-tip producing side work for extensive periods of time, during which they were not paid at the requisite state minimum wage rate.

93.    As Defendant has failed to properly inform Plaintiff and Pennsylvania Class Members of the required tip credit provisions and have required these workers to perform excessive amounts of non-tip producing work while improperly paying them subminimum wages for such work Defendant is not entitled to claim a tip credit. Accordingly, Defendant has willfully violated state law by failing and refusing to pay all state minimum wages due and owing to Plaintiff and Pennsylvania Class Members.

94.     Defendant's practice was to unlawfully and willfully fail to comply with the requirements for its entitlement to a tip credit and therefore, Plaintiff and Pennsylvania Class Members were not properly paid state minimum wages pursuant to the PMWA.

95.     Plaintiff and Pennsylvania Class Members are therefore owed compensatory damages for unpaid minimum wages, pre-judgment and post-judgment interest as provided by law, an award of attorneys' fees and costs as allowed by 43 P.S. § 333.113, and such other relief as the Court deems fair and equitable.

<u>**COUNT III**</u>
**Violation of the PMWA**
**Failure to Pay Minimum Wages Due to Improper Deductions/Expenses**
**On Behalf of Plaintiff and the Pennsylvania Class Members**

96.     Plaintiff incorporates the preceding paragraphs by reference.

97.     Defendant violated the PMWA by making deductions from the wages of Plaintiff and Pennsylvania Class Members for clothing/uniform requirements, which reduced their wages below the state required minimum wage. These expenses incurred by Plaintiff and Pennsylvania Class Members were primarily for the benefit of Defendant and, therefore, cannot constitute a credit toward Defendant's obligation to pay Plaintiff and Pennsylvania Class Members minimum wage. Defendant did not reimburse Plaintiff and Pennsylvania Class Members for these required purchases made for Defendant's benefit. As a result, Plaintiff's and Pennsylvania Class Members' rate of pay was effectively reduced below the state minimum wage during the workweeks in which they were required to purchase mandatory clothing required by Defendant to perform their jobs, including specific types and stiles of shirts, pants, and shoes.

98.     Defendant's practice was unlawful and a willful failure to comply with the requirements of the PMWA.

99.     Plaintiff and Pennsylvania Class Members are therefore owed compensatory damages for unpaid minimum wages, pre-judgment and post-judgment interest as provided by law, an award of attorneys' fees and costs as allowed by 43 P.S. § 333.113, and such other relief as the Court deems fair and equitable.

<u>**COUNT IV**</u>
**Violation of the WPCL**
**Failure to Pay All Compensation Due and Owing on Regular Paydays**
**On Behalf of Plaintiff and the Pennsylvania Class Members**

100.    Plaintiff incorporates the preceding paragraphs by reference.

101.    During all relevant times to this Action, Defendant has employed, and/or continues to employ, Plaintiff and Pennsylvania Class Members within the meaning of Pennsylvania's WPCL, 43 P.S. § 260.1, *et seq*.

102.    Pursuant to the WPCL, Plaintiff and Pennsylvania Class Members were entitled to receive all compensation due and owing to them on their regular paydays.

103.    As a result of Defendant's unlawful policies and/or practices, Plaintiff and Pennsylvania Class members have been deprived of all compensation due and owing, including unpaid minimum wages.

104.    Further, due to Defendant's policy of deducting amounts and/or requiring Plaintiff and Pennsylvania Class Members to pay amounts for required uniform clothing out of their own pockets and without being reimbursed by Defendant for such required purchases, Plaintiff and Pennsylvania Class Members were subject to improper deductions from their compensation.

105.    Plaintiff and Pennsylvania Class Members are therefore owed damages for the total amount of wages due under 43 P.S. § 260.9a, an additional amount of 25% of the total amount of wages due or five hundred dollars ($500), whichever is greater, as liquidated damages under 43 P.S. § 260.10, pre-judgment and post-judgment interest as provided by law, an award of attorneys'

fees and costs as allowed by 43 P.S. § 260.9a, and such other relief as the Court deems fair and equitable.

**COUNT V**
**Unjust Enrichment Under Pennsylvania Common Law**
**On Behalf of Plaintiff and the Pennsylvania Class Members**

106.    Plaintiff incorporates the preceding paragraphs by reference.

107.    Defendant benefits from requiring Plaintiff and Pennsylvania Class Members, workers already being paid at subminimum wage rates, to front the expenses and costs of clothing to satisfy Defendant's required work uniform, and by failing to pay its employees for all hours worked at the legal and applicable wage rates set by state and/or federal law, including minimum wages.

108.    Defendant was aware or should have been aware that it was receiving such benefits.

109.    Defendant accepted and retained such benefits under such circumstances that it is inequitably and unjust for Defendant to retain such benefits without paying fair compensation to Plaintiff and Pennsylvania Class Members for same.

110.    Plaintiff and Pennsylvania Class Members are therefore entitled to an order requiring Defendant to disgorge the value of its ill-gotten benefits to Plaintiff and the Pennsylvania Class Members, an award of pre-judgment and post-judgment interest as provided by law, and such other relief as the Court deems fair and equitable.

**IX.    JURY DEMAND**

111.    Plaintiff hereby demands a trial by jury on all issues.

**X.    PRAYER FOR RELIEF**

112.    For the reasons stated herein, Plaintiff requests that judgment be entered in her favor awarding her and the Class Members:

a.  An order authorizing notice to be sent to all similarly situated workers and certifying this matter as a collective action pursuant to 29 U.S.C. § 216(b);

b.  Declaring that Defendant's practices violate the FLSA;

c.  An order certifying this case as a class action pursuant to Rule 23;

d.  Declaring that Defendant's practices violate the PMWA, WPCL, and Pennsylvania common law;

e.  Minimum wage compensation unadulterated by the tip credit;

f.  Liquidated damages;

g.  Reimbursement for all expenses and wages wrongfully withheld;

h.  Disgorgement of all ill-gotten gains by Defendant from such conduct;

i.  An order requiring Defendant to correct its pay practices going forward;

j.  Pre-judgment interest and post-judgment interest as provided by law;

k.  Reasonable attorneys' fees, costs, and expenses of this action; and

l.  All such other and further relief to which Plaintiff and the Class Members may be entitled, both in law and in equity.


Date: March 3, 2022                              Respectfully submitted,


                                                  /s/ Sean L. Ruppert
                                                 Sean L. Ruppert
                                                 Pennsylvania State Bar No. 314380
                                                 RUPPERT LAW FIRM, LLC
                                                 4099 William Penn Highway, Suite 215
                                                 Monroeville, Pennsylvania 15146
                                                 Tel: (412) 206-9474; Fax: (412) 571-8825
                                                 sean@ruppertlawfirm.com

                                                 Anthony J. Lazzaro*
                                                 Ohio State Bar No. 0077962

THE LAZZARO LAW FIRM LLC
The Heritage Building, Suite 250
34555 Chagrin Boulevard
Moreland Hills, Ohio 44022
Tel: (216) 696-5000; Fax: (216) 696-7005
anthony@lazzarolawfirm.com

Don J. Foty*
Texas State Bar No. 24050022
William M. Hogg*
Texas State Bar No. 24087733
California State Bar No. 338196
HODGES & FOTY, LLP
4409 Montrose Blvd., Suite 200
Houston, TX 77006
Tel: (713) 523-0001; Fax: (713) 523-1116
dfoty@hftrialfirm.com
whogg@hftrialfirm.com

* - To apply for admission *pro hac vice*

*Counsel for Plaintiff, Class, and Collective
Members*